UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA MARIE CLARKE,

                Petitioner,

v.                                    CASE NO. 05-60151
                                    HON. JOHN CORBETT O'MEARA

MILLICENT WARREN,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS,**
**DENYING A CERTIFICATE OF APPEALABILITY, BUT**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

      This matter is pending before the Court on petitioner Tina Marie Clarke's

application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is

challenging her state convictions for murder, conspiracy, armed robbery, and two

firearm offenses.  Having reviewed the pleadings and record, the Court concludes that

Petitioner is not entitled to habeas corpus relief.  Accordingly, the habeas petition and

amended petition will be denied.

**I. Background**

    **A.  The Facts**

      Petitioner was charged in Genesee County, Michigan with armed robbery,

conspiracy to commit armed robbery, felon in possession of a firearm, possession of a

firearm during the commission of a felony (felony firearm), and two counts of first-

degree (felony) murder.  The charges arose from the robbery and fatal shooting of two

brothers, John and Kim Crider, in Grand Blanc Township late on January 24, 2001, or early on January 25, 2001.  The testimony at trial established that, on the night in question, Jerry Boroff ("Pops") drove Petitioner to her cousin's home.  Kevin Debus and Harry Trombley rode along.  Petitioner acquired a gun from her cousin after informing him that she was being harassed and needed protection from someone who had assaulted her two weeks earlier.  Patricia Plummer subsequently joined Petitioner, "Pops," Debus, and Trombley.  The five of them went to a Meijers store, because Plummer wanted to help a friend who was having car trouble in the parking lot and Petitioner wanted to buy bullets for her gun.

Next, the group went to a convenience store on Maple Road in Grand Blanc Township.  Patricia Plummer talked to Kim Crider outside the store.  She then invited Petitioner to go with her to Crider's home next door to make some money.  Petitioner and Plummer went inside Crider's house while Pops, Harry Trombley, and Kevin Debus waited in the van at a nearby car wash.  There were four men inside the Crider residence: Kim Crider, John Crider, Randy Crider, and John Sanborn, who was a friend of the Crider brothers.  One of the men had a wad of money.

Petitioner and Plummer later rejoined "Pops," Trombley, and Debus, and the group went to a house on Pringle Street in Flint where four of them lived.  On the ride there, Petitioner and Plummer talked about going back to Kim Crider's house on Maple Road and robbing the men.  After they arrived at the Pringle Street house, Petitioner and Plummer changed into black clothes.  Kevin Debus then drove the two women back to the house on Maple Road.  He waited in the van while Petitioner and Plummer went inside the house.  The man with the wad of money had already left.  Only Kim and John

2

Crider were there.  Both men were shot more than once.  Petitioner and Plummer then exited the house and were driven back to the Pringle Street house by Kevin Debus.

Meanwhile, about midnight, John Crider went to his neighbor John Cardinal's house where Cardinal and Arnis Davidsons were watching television.  John Crider had been shot and was bleeding, and he said that his brother was dead next door.  When the police arrived, John Crider informed one of the officers that two white females on foot had shot him.  Kim Crider died that same day.   John Crider survived for two weeks and then died.  Both men died from gunshot wounds.

Petitioner sold her gun to Emmanuel Williams ("T"), who had possession of the gun when the police stopped him while driving on January 25, 2001.  Petitioner became a suspect and was arrested after the police talked to "T."

Detective Donald Elford interrogated Petitioner on January 26, 2001.  Petitioner informed Detective Elford that she acquired the gun to shoot David Smith, and that she subsequently accompanied Patricia Plummer to the victims' home where there were four men.  One of the men showed her a wad of cash, and on the way back to Pringle Street, Plummer mentioned that she wanted to go back and rob the men.  After they put on black clothes, Kevin Debus took them back to the house.  The loaded gun was in her pocket when she and Plummer went inside the house.  Only two men were there; the man with the wad of cash had left.  She handed the gun to Plummer because she did not have the courage to "do it."  Plummer then shot both men.  They cut up one victim's wallet and disposed of it.

Petitioner also admitted to Elford that she sold the gun to "T" after the incident. She claimed that she and Plummer had intended to commit only a robbery and to

3

acquire money, but she also admitted that Plummer had said she wanted to go in and shoot everybody.

Nineteen minutes after the interview with Detective Elford, Petitioner asked to speak with him again. She then described where she hid a needle, which she and Plummer had intended to use to poison the man in the hospital, if necessary, to prevent him from identifying them.

### B.  The Trial, Sentence, Direct Appeal, and Initial Habeas Petition

Petitioner was tried jointly with Patricia Plummer and Kevin Debus, but each defendant had a separate jury. Randy Crider and John Sanborn identified Petitioner and Patricia Plummer at trial as the two women who had been at Kim Crider's house the night of January 24, 2001. Randy Crider testified that one of the women had asked for money in return for drugs and the other woman had asked for money in return for sex. He recalled taking $39 out of his pocket to help pay for the beer that Kim had bought, but he claimed that he put the money back in his pocket when Kim declined the offer of money. He also testified that the women were still there when he left the house with John Sanborn about 11:30 p.m. He later learned that his brothers had been shot.

On September 24, 2001, Petitioner's jury found her guilty, as charged, of: two counts of felony murder, Mich. Comp. Laws § 750.316(1)(b); conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a and Mich. Comp. Laws § 750.529; armed robbery, Mich. Comp. Laws § 750.529; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to: life imprisonment for the two murders, the armed robbery, and the conspiracy; thirty-eight months (three years, two months) to ninety

months (seven and a half years) for the felon-in-possession conviction; and a consecutive term of two years for the felony firearm conviction.

In an appeal of right, Petitioner alleged that (1) there was insufficient evidence to sustain her murder convictions, (2) the prosecutor engaged in misconduct, (3) the trial court misstated the law, and (4) trial counsel was ineffective for failing to insure that the jury was properly instructed. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, *see People v. Clarke*, No. 238359 (Mich. Ct. App. Sept. 16, 2003), and on March 30, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Clarke*, 469 Mich. 1026; 679 N.W.2d 60 (2004) (table).

Petitioner filed her federal habeas corpus petition in this Court on June 29, 2005. She alleged that (1) there was insufficient evidence to sustain the jury's verdict on first-degree murder, (2) the prosecutor committed misconduct, and (3) the jury instructions were inaccurate and confusing. After the State filed a responsive pleading, Petitioner moved to hold her case in abeyance so that she could exhaust state court remedies for several new claims. On September 1, 2006, the Court granted Petitioner's motion and closed her case for administrative purposes.

### C. The State Collateral Proceedings and Second Habeas Petition

Petitioner subsequently filed a motion for relief from judgment in which she alleged that (1) the state district court abused its discretion in binding her over to circuit court, (2) certain jurors were biased or prejudiced against her, (3) the trial court gave improper jury instructions, (4) she was entitled to a separate trial, (5) trial counsel was ineffective, and (6) the prosecutor failed to produce all endorsed witnesses. The trial court denied Petitioner's motion in a reasoned opinion, and the Michigan Court of

5

Appeals denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Clarke*, No. 282375 (Mich. Ct. App. Apr. 15, 2008). On October 27, 2008, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Clarke*, 482 Mich. 1032; 769 N.W.2d 193 (2008).

On March 20, 2009, Petitioner filed another federal habeas corpus petition in this District. She alleged that the trial court abused its discretion when ruling on her motion for relief from judgment, the pathologist gave perjured testimony, and both trial and appellate counsel were ineffective. The Clerk of Court randomly assigned the 2009 habeas petition to another judge in this District, who reassigned the petition to this Court as a companion to Petitioner's 2005 case. This Court treated the 2009 petition as an amended petition and then re-opened this case and closed the 2009 case.

Respondent has filed answers to the habeas petitions, and the case is now ready to be adjudicated. Although Respondent contends that Petitioner failed to comply with the Court's deadline for re-opening her case, the Court will excuse any procedural errors and address the substantive merits of Petitioner's claims.

## II. STANDARD OF REVIEW

State prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

6

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

7

### III. Discussion

#### A. Sufficiency of the Evidence

The first habeas claim alleges that the evidence was insufficient to sustain the jury's verdict on the first-degree murder charges.   Petitioner concedes that she conspired to rob the victims, but she denies conspiring or intending to murder anyone. She also claims that she abandoned the intent to commit a robbery after she arrived at the victims' home and discovered that the man or men with the money had left the premises.  She maintains that Patricia Plummer shot John and Kim Crider.

#### 1.  Clearly Established Law

The Michigan Court of Appeals reviewed Petitioner's claim in the appeal of right and concluded that the evidence was sufficient to support the jury's verdict on the felony murder charges.  The relevant question on habeas corpus review of a sufficiency-of-the-evidence claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal citation omitted) (emphasis in original).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 n.16.

In Michigan, the elements of felony murder are (1) the killing of a human being, (2) with malice, (3) while committing, attempting to commit, or assisting in the commission of specified felonies.  *People v. Carines,* 460 Mich. 750, 758-759; 597

8

N.W.2d 130, 136 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 566; 540

N.W.2d 728, 732 (1995)).  Malice is defined as the intent to kill, the intent to do great

bodily harm, or the intent to create a very high risk of death or great bodily harm with

knowledge that death or great bodily harm was the probable result.  *Id.*, 460 Mich. at

759; 597 N.W.2d at 136.

> A jury can properly infer malice from evidence that a defendant
> intentionally set in motion a force likely to cause death or great bodily
> harm.  Thus, whenever a killing occurs in the perpetration or attempted
> perpetration of an inherently dangerous felony, in order to establish malice
> the jury may consider the "nature of the underlying felony and the
> circumstances surrounding its commission."  If the jury concludes that
> malice existed, they can find murder and, if they determine that the murder
> occurred in the perpetration or attempted perpetration of one of the
> enumerated felonies, by statute the murder would become first-degree
> murder.

*People v. Aaron*, 409 Mich. 672, 729-30; 299 N.W.2d 304, 327 (1980) (internal citations

omitted).

The underlying felony in this case was armed robbery, which is one of the

felonies enumerated in the felony murder statute.  *See* Mich. Comp. Laws § 750.316(1)(

b).  At the time of Petitioner's trial in 2001, the elements of armed robbery were:  "'(1) an

assault, (2) a felonious taking of property from the victim's presence or person, (3) while

the defendant is armed with a weapon described in the statute.'"  *People v. Carines*,

460 Mich. at 757; 597 N.W.2d at 135  (quoting *People v. Turner,* 213 Mich. App. at 569;

540 N.W.2d at 734).[1]

---

[1] The armed robbery statute was amended in 2004.  *People v. Chambers*, 277
Mich. App. 1, 7; 742 N.W.2d 610, 614 (2007).

> [A] prosecutor must now prove, in order to establish the elements of
> armed robbery, that (1) the defendant, in the course of committing a

The prosecution must prove the following elements to establish that the defendant is guilty under an aiding and abetting theory:

> "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave the aid and encouragement."

*People v. Robinson,* 475 Mich. 1, 6; 715 N.W.2d 44, 47-48 (2006) (quoting *People v. Moore*, 470 Mich. 56, 67-68; 679 N.W.2d 41, 49 (2004) (quoting *People v. Carines*, 460 Mich. at 768; 597 N.W.2d at 141).  "Abandonment is an affirmative defense, and the burden is on the defendant to establish by a preponderance of the evidence voluntary and complete abandonment of a criminal purpose."  *People v. Cross*, 187 Mich. App. 204, 206; 466 N.W.2d 368, 369 (1991).

### 2.  Application

It is undisputed that John and Kim Crider were shot and killed.  Petitioner also does not dispute that she conspired to commit a robbery.  The issues are whether Petitioner shot the Criders or whether she aided and abetted Patricia Plummer in shooting the Criders during an armed robbery or attempt to commit a robbery and, if so,

---

larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

*Id.*, 277 Mich. App. at 7; 742 N.W.2d at 614 (footnote omitted).

whether she had the requisite state of mind.

Petitioner's statement to the police and the other evidence in the case

established that Petitioner

> went to the victims' house with the intention of robbing the victims. [She]
> changed into dark clothes in preparation for the robbery, separately
> procured a gun and ammunition, brought the loaded gun to the victims'
> house where she knew they were home, and provided Patricia Plummer
> with the loaded weapon knowing that Plummer wanted and planned to
> shoot the victims.

*People v. Clarke*, Mich. Ct. App. No. 238359, at 3.  There was additional evidence that

bullets removed from the deceased victims and found at the crime scene were fired by

the same gun, that Petitioner's gun was used to shoot the Criders, and that Petitioner or

Patricia Plummer took one victim's wallet.

The jury could have concluded from the evidence that Petitioner shot the Criders

or that she aided and abetted Patricia Plummer in shooting the Criders during an armed

robbery or attempt to commit a robbery.  By taking a loaded gun to the Crider residence

and intending to commit a robbery, Petitioner set in motion a force likely to cause death

or great bodily harm.  At a minimum, the jury could have concluded that Petitioner

intended to create a very high risk of death or great bodily harm with knowledge that

death or great bodily harm was the probable result.  In the alternative, the jury could

have concluded that Petitioner aided and abetted Patricia Plummer, knowing that

Plummer intended to kill, to do great bodily harm, or to create a high risk of death or

great bodily harm.  Even though Petitioner informed the police that she did not have the

courage to do the shooting, she handed the loaded gun to Plummer, knowing that

Plummer wanted to shoot the victims.  She has failed to show that she voluntarily and

completely abandoned her criminal purpose.

The evidence taken in the light most favorable to the prosecution was sufficient for the jury to conclude beyond a reasonable doubt that Petitioner was guilty of felony murder. Therefore, the state court's conclusion – that the evidence was sufficient – was objectively reasonable, and Petitioner has no right to relief on the basis of her challenge to the sufficiency of the evidence.

### B.  The Prosecutor

The second habeas claim alleges prosecutorial misconduct. Petitioner contends that the prosecutor vouched for his witnesses, denigrated Petitioner and her attorney, appealed to the juror's civic duty and sympathy for the victim, argued facts not in evidence, inaccurately characterized the evidence, and misrepresented the law.

The Michigan Court of Appeals reviewed most of Petitioner's claims for "plain error" because she did not make a contemporaneous objection at trial. The Court of Appeals concluded that

> the prosecutor did not mischaracterize the facts of the case or attempt to mislead the jury during closing arguments. The prosecutor did not introduce any facts not in evidence during his closing arguments. The prosecutor did not make an improper "civic duty" argument to the jury or improperly attempt to inflame their passions. The prosecutor did not denigrate defense counsel in his rebuttal. The trial judge's instructions cured any misstatements of the law, or appeals to the sympathies of the jury by the prosecutor.

*Clarke*, Mich. Ct. App. No. 238359, at 6. The Court of Appeals found no prosecutorial misconduct that amounted to plain error or deprived Petitioner of substantial rights.

### 1.  Clearly Established Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas

review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on her claim, Petitioner must demonstrate that the prosecutor's remarks infected the trial with such unfairness "as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Courts in this Circuit employ a two-prong test for determining whether prosecutorial misconduct rendered a trial fundamentally unfair.  *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)).  First, a court asks whether the prosecutor's conduct or remarks were improper. *Id.* at 516.  Second, if the conduct or remarks were improper, a reviewing court must consider the following four factors to determine "whether the improper acts were so flagrant as to warrant reversal:  (1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally."  *Id.*

Claims of prosecutorial misconduct also are subject to harmless-error analysis. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).  An error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 2.  Comments on the Evidence

Petitioner contends that the prosecutor misstated the evidence during closing arguments when he said that (1) Petitioner took a wallet from Kim Crider after she shot

13

him several times (Tr. Sept. 21, 2001, at 89), (2) that Petitioner acquired a gun from her cousin by manipulating him into thinking that she was in danger (*id.* at 91), and (3) that John Crider's last words were, "Honey, you didn't mean to do that, did you?"  (*Id.* at 96.) Petitioner claims that there was no evidence that she took Kim Crider's wallet or that she did the actual shooting or that she manipulated her cousin.  She also maintains that, because John Crider spoke to other people after he was shot, the prosecutor was incorrect about Crider's last words.  The Michigan Court of Appeals determined that the alleged errors were not reversible error and that they did not affect Petitioner's substantial rights.

Prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), but they have "'leeway to argue reasonable inferences from the evidence' during closing arguments."  *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).  Petitioner's jury could have inferred that Petitioner took a wallet from Kim Crider after she or Patricia Plummer shot him because she mentioned something about cutting up and disposing of a wallet when she talked to Detective Donald Elford.  (Tr. Sept. 18, 2001, at 26-27.)

There also was evidence that Petitioner acquired a gun from her cousin after informing her cousin that she needed protection.  Even though there was no evidence that she manipulated her cousin to acquire the gun,[2] and even if the prosecutor was

---

[2] There was testimony that David Smith and some unidentified girls severely assaulted Petitioner about two weeks before the murder and that Petitioner acquired the

incorrect about the content of John Crider's last words, the prosecutor's comments were isolated remarks in a lengthy trial. The trial court, moreover, instructed the jury that the attorneys' arguments were not evidence. The trial court also charged the jurors to consider only the admissible evidence, which consisted of the sworn testimony, the exhibits, and anything else that the court told them to consider as evidence. (Tr. Sept. 21, 2001, at 127.) A trial court generally can correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence." *United States v. Crosgrove*, 637 F.3d at 664 (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)) The Court therefore concludes that even though the prosecutor may have misstated some evidence, the prosecutor's conduct was not flagrant.

### 3. Sympathy for the Victim and Appeal to the Jury's Emotions

Petitioner alleges that the prosecutor evoked sympathy for the victims by stating in his closing argument that Kim Crider would have been a quadriplegic if he had survived. As for John Crider, the prosecutor stated that he "hung in there for almost two weeks," despite three surgeries, a tube in his wind pipe, a ventilator, and a colostomy bag. (Tr. Sept. 21, 2001, at 97.) The prosecutor also said that, "thankfully," John Sanborn and Randy Crider were not present when the defendants returned to the victims' home because, "otherwise, they would be dead too." (*Id.* at 100.)

The Michigan Court of Appeals reviewed this claim and found no merit in it. The Court of Appeals stated that the prosecutor permissibly commented on the evidence,

---

gun for protection against further assaults.

accurately described the heinous nature of the shootings, and did not ask the jury to suspend its judgment or to decide the case on the basis of sympathy. The Court of Appeals also stated that the prosecutor's lone suggestion that there could have been more victims did not amount to misconduct.

A prosecutor may not make closing remarks that are wholly irrelevant to any facts or issues in the case in order to arouse the jury's passions or prejudice. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008) (internal and end citations omitted), *cert. denied*, __ U.S. __, 129 S. Ct. 1668 (2009). "Closing arguments that encourage juror identification with crime victims are improper." *Id.*

The disputed remarks about Kim and John Crider's physical injuries were based on the evidence, and the comments about John Sanborn and Randy Crider were reasonable inferences from the evidence. Therefore, the remarks were proper.

### 4.  Vouching

Petitioner claims that the prosecutor vouched for his theory of the case when he stated during closing arguments that Petitioner incriminated herself during her statement to the police. (Tr. Sept. 21, 2001, at 102.) The Michigan Court of Appeals determined that there was no reversible misconduct, because the prosecutor neither argued facts not in evidence, nor improperly vouched for the credibility of the detective who interrogated Petitioner. According to the Court of Appeals, the prosecutor argued that the detective was worthy of belief based on the evidence and reasonable

16

inferences drawn from the evidence.

      The United States Court of Appeals for the Sixth Circuit has stated that

> "[i]mproper vouching occurs when a prosecutor supports the credibility of
> a witness by indicating a personal belief in the witness's credibility thereby
> placing the prestige of the [prosecutor's office] behind that witness."
> [*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)].  This
> generally involves either blunt comments asserting personal belief, or
> comments that imply special knowledge of facts not before the jury or the
> credibility or truthfulness of the witness.  *Id.*

*United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).  "An improper statement of

personal belief, moreover, "is not per se reversible error."  Instead, the improper

statement must be "flagrant enough to 'warrant reversal.'"  *United States v. Henry*, 545

F.3d 367, 380 (6th Cir. 2008)).

      The prosecutor did not express a personal belief in the credibility of the detective

who interrogated Petitioner.  He was merely saying that, during the interrogation,

Petitioner had admitted to being an aider and abettor by blaming the shooting on

Patricia Plummer.  The comment did not amount to improper vouching.

### 5.  Statement of the Law

      Petitioner maintains that the prosecutor misstated the law on felony murder by

suggesting that the jury could find Petitioner guilty of felony murder if she intended to

rob the victims.  Petitioner also faults the prosecutor for saying that she was guilty of

premeditated murder.  The Michigan Court of Appeals determined that the prosecutor's

statements were not a clear misstatement of the law and that any suspect articulation

was corrected by the trial court's proper instructions to the jury.

      To be found guilty of felony murder, the prosecutor must show that the defendant

intended to do more than commit the underlying felony.  *People v. Aaron*, 409 Mich. at

727-30; 299 N.W.2d at 326-27.  The requisite malice is the intent to kill, the intent to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm.  *Id.*, 409 Mich. at 728; 299 N.W.2d at 326.

The prosecutor did say that, "just by committing the robbery . . . that is felony murder."  (Tr. Sept. 21, 2001, at 108.)  However, the gist of his argument was that, by creating a dangerous situation in which two men were killed, Petitioner was guilty of felony murder.  This was consistent with *People v. Aaron*, in which the Michigan Supreme Court stated that,

> [a] jury can properly infer malice from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm.  Thus, whenever a killing occurs in the perpetration or attempted perpetration of an inherently dangerous felony, in order to establish malice the jury may consider the "nature of the underlying felony and the circumstances surrounding its commission."  If the jury concludes that malice existed, they can find murder and, if they determine that the murder occurred in the perpetration or attempted perpetration of one of the enumerated felonies, by statute the murder would become first-degree murder.

*Id.,* 409 Mich. at 729-30; 299 N.W.2d at 327.

The trial court, moreover, instructed the jurors to follow the court's instructions and to ignore the attorneys' arguments and use the law given to them by the court if the attorneys said something different about the law in their arguments.  (Tr. Sept. 21, 2001, at 125.)  Because the trial court correctly instructed the jury on felony murder and did not give the jury the option of finding Petitioner guilty of premeditated murder,  the prosecutor's alleged misstatements were harmless.

### 6.  Civic Duty

18

The prosecutor stated in his closing argument that Petitioner murdered the victims in cold blood and that it was now time for justice and to find Petitioner guilty. The prosecutor went on to say that Petitioner murdered two people and that she should be held accountable. (*Id.* at 110.) Petitioner alleges that this was an appeal to the jury to do its civic duty. The Michigan Court of Appeals disagreed and concluded that, because the prosecutor did not make a civic duty argument, there was no misconduct.

"Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). The type of appeal that the Sixth Circuit has considered improper is one where the prosecutor urges the jury to convict the defendant in order to send a message to other potential criminals in the community. *United States v. Ghazaleh*, 58 F.3d 240, 246 (6th Cir. 1995) (citing *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992), and *United States v. Solivan*, 937 F.2d at 1146).

The prosecutor in this case did not urge the jury to send a message to potential criminals. He merely exhorted the jury to hold Petitioner accountable and to find Petitioner guilty based on the evidence. It was not improper to urge jurors to fulfill their societal duty, *Byrd v. Collins*, 209 F.3d at 538-39, or "to remind the jury that there is a general 'community or societal need to convict guilty people.'" *Reed v. United States*, 133 F. App'x 204, 209 (6th Cir. 2005) (quoting *Solivan*, 937 F.2d at 1155). Therefore, the argument was proper.

### 7. Denigrating Petitioner and Defense Counsel

Petitioner claims that the prosecutor denigrated her and her attorney by stating in

19

his rebuttal argument that defense counsel's closing argument had consisted of fashion statements, football games, and the fact that Petitioner was assaulted two weeks before the murders.  (Tr. Sept. 21, 2001, at 110.)   The Michigan Court of Appeals determined that the prosecutor's comments were proper.  According to the Court of Appeals, the prosecutor did not denigrate the credibility of defense counsel, nor suggest that defense counsel was intentionally trying to mislead the jury.  The Court of Appeals opined that the prosecutor was merely rebutting defense counsel's arguments and that the rebuttal was not misconduct.

Prosecutors may not make personal attacks on opposing counsel, *United States v. Carter*, 236 F.3d at 784 (citing *United States v. Young*, 470 U.S. 1, 9 & n. 7 (1985), and *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir. 1996)), but the disputed remarks in this case were a response to defense counsel's closing argument, not a personal attack on defense counsel.  Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overton*, 682 F.2d 605, 607-08 (6th Cir. 1982) (citing *Donnelly v. DeChristoforo*, 416 U.S. at 637).   The issues raised in defense counsel's closing argument were "fair game for the prosecution on rebuttal."  *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984).

### 8.  Conclusion

The prosecutor's comments during closing arguments were either proper or not "so egregious as to render the trial fundamentally unfair," *Angel*, 682 F.2d at 608, particularly under the "'stringent standards applicable on habeas review.'" *Durr v. Mitchell*, 487 F.3d 423, 441 (6th Cir. 2007) (quoting *Byrd v. Collins*, 209 F.3d at 539).

20

The Court therefore declines to issue the writ of habeas corpus on the basis of Petitioner's prosecutorial-misconduct claim.

### C. The Jury Instructions

The third habeas claim alleges that the trial court gave inaccurate and confusing jury instructions. The Michigan Court of Appeals concluded on review of this claim that the trial court properly instructed the jury on the elements and requisite intent of the charged offenses. The Court of Appeals stated that, although the trial court's instructions were somewhat imperfect, they fairly presented the issues to be tried and sufficiently protected Petitioner's rights.

The question on habeas corpus review of jury instructions is whether the instructions violated some right guaranteed to the defendant by the Fourteenth Amendment or infected the entire trial to such an extent that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). A jury instruction

> "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten, supra*, 414 U.S., at 147, 94 S. Ct., at 400-01. In addition, in reviewing an ambiguous instruction . . . , [courts] inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed.2d 316 (1990).

*Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

### 1. Armed Robbery

Petitioner contends that the trial court erred by failing to read an element of armed robbery, namely, the intent to permanently deprive the victim of property. Petitioner alleges that this was particularly significant because armed robbery was the

21

predicate felony for the felony murder charge.

"Armed robbery is a specific intent crime for which the prosecutor must establish that the defendant intended to permanently deprive the owner of property." *People v. King,* 210 Mich. App. 425, 428; 534 N.W.2d 534, 536 (1995). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v. McRunels*, 237 Mich. App. 168, 181; 603 N.W.2d 95, 102 (1999) (citing *People v. Bowers*, 136 Mich. App. 284, 297; 356 N.W.2d 618, 624 (1984).

The trial court did not instruct Petitioner's jury that, in order to convict Petitioner guilty of armed robbery, the jury had to find that Petitioner intended to permanently deprive the victims of money or property. However, Petitioner went to the victims' home armed with a weapon, and her purpose was to take money from the victims who were shot and killed during the incident. It was obvious from the evidence that she intended to permanently deprive the victims of money. The Court therefore finds that the error in the jury instruction could not have had a substantial and injurious effect of influence on the jury's verdict and was harmless. *Brecht v. Abrahamson*, 507 U.S. at 623; *see also Neder v. United States*, 527 U.S. 1, 8-10 (1999) (concluding that a jury instruction which omits an element of the offense is subject to harmless-error review).

### 2. Aiding and Abetting

Petitioner faults the trial court for not specifying the crimes to which the aiding and abetting statute applied. The court merely referred to "the crime" or "the offense" when instructing on aiding and abetting. (Tr. Sept. 21, 2001, at 138-40.)

Nevertheless, "[t]he aiding and abetting statute neither expressly nor impliedly limits the persons or crimes encompassed by its terms." *People v. Moore*, 470 Mich. at

22

68; 679 N.W.2d at 49. The prosecuting attorney used the aiding and abetting theory in connection with the murder charge by stressing that it did not matter who the shooter was. (Tr. Sept. 21, 2001, at 103-06.) The jury also could have logically applied the theory to the armed robbery and felony firearm counts. Thus, there is not a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution.

Petitioner also contends that the trial court failed to instruct the jurors that aiding and abetting is a specific intent crime. Aiding and abetting, however, "is not a separate substantive offense. Rather, 'being an aider and abettor is simply a theory of prosecution' that permits the imposition of vicarious liability for accomplices." *People v. Robinson*, 475 Mich. at 6; 715 N.W.2d at 47 (footnote omitted).

The trial court, moreover, informed the jury that Petitioner was charged with committing the offense itself or "intentionally assisting someone else in committing it." (Tr. Sept. 21, 2001, at 138-39.) The court also said that

> anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it, and can be convicted of that crime as an aider and abetter.
>
> Now, to prove this kind of charge, the prosecutor must prove certain things to you beyond a reasonable doubt.
>
> . . . .
>
> [T]hird, that the defendant must have intended the commission of the crime alleged, or must have know that the other person intended to its commission at the time of giving the assistance.
>
> It doesn't matter how much help, advice, or encouragement the defendant . . . gave . . . . However, you must decide whether this defendant intended to help another commit the crime . . . .

23

(*Id.* at 139.)  These instructions adequately informed the jury that aiding and abetting required a specific intent.

### 3.  Felony Murder

Petitioner claims that the trial court gave an incorrect instruction on the intent needed to be found guilty of felony murder.  As noted above, the *mens rea* needed to be found guilty of felony murder is the intent to kill, the intent to do great bodily harm, or the intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.  *Carines,* 460 Mich. at 759; 597 N.W.2d at 136.

At one point during the jury instructions, the trial court stated that the specific intent needed for felony murder was the intent to kill or the intent to commit armed robbery.  (Tr. Sept. 21, 2001, at 152.)  The trial court subsequently stated that the requisite intent was the intent to kill or to knowingly create a very high risk of death or great bodily harm.  (*Id.* at 154.)  Although neither one of these instructions was completely accurate, the trial court read a correct statement of the law when it explained the elements of felony murder.  The court twice stated that, to prove first-degree murder, the prosecutor had to prove that Petitioner had one of three states of mind:  the intent to kill, the intent to do great bodily harm, or the intent to knowingly create a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of her actions.  (Tr. Sept. 21, 2001, at 142.)  Because the court correctly defined the *mens rea* required for felony murder, Petitioner is not entitled to habeas corpus relief.

### 4.  Second-Degree Murder

24

The trial court instructed the jury on second-degree murder as a lesser-included offense of first-degree murder.  Petitioner claims that the trial court erroneously stated that second-degree murder was a specific intent crime.

The trial court implied that second-degree murder was a specific-intent crime when the court said:  "Now, some of these charges we call crimes of specific intent. The second-degree murder, the armed robbery, the conspiracy to commit armed robbery, the felony firearm, . . . ."  (*Id.* at 150-51.)  "Second-degree murder is not a specific-intent crime since it does not require intent to kill, but rather, only wanton and wilful disregard of the likelihood that the natural tendency of the person's behavior is to cause death or great bodily harm must be shown."  *People v. England*, 164 Mich. App. 370, 375; 416 N.W.2d 425, 427 (1987) (citing *People v. Langworthy*, 416 Mich. 630, 651; 331 N.W.2d 171 (1982)).  Nevertheless, when the trial court explained the elements of second-degree murder, the court correctly stated that the state of mind required for second-degree murder was the intent to kill, the intent to do great bodily harm, or the intent to create a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of her actions.  (Tr. Sept. 21, 2001, at 143.)  Thus, the jury was correctly instructed on second-degree murder.

The Court agrees with the Michigan Court of Appeals that, overall, the trial court properly instructed the jury on the elements of the charged offenses.  Thus, Petitioner has no right to relief on the basis of the trial court's jury instructions.

### D.  The Trial Court's Alleged Abuse of Discretion on Collateral Review

The fourth habeas claim alleges that the trial court abused its discretion when it denied Petitioner's motion to amend her motion for relief from judgment.  Petitioner

25

asserts that the trial court improperly construed her motion to amend as a successive motion for relief from judgment.

The fifth habeas claim alleges that the trial court abused its discretion when denying Petitioner's motion for relief from judgment, motion to amend, and motion for reconsideration.  Petitioner claims that she established "good cause" and "actual prejudice" in compliance with Michigan Court Rule (D)(3)(a) and (b).

These claims lack merit because they allege violations of state law.  "Issues of state law cannot form the basis for *habeas* relief."  *Landrum v. Mitchell*, 625 F.3d at 913 (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and *Estelle v. McGuire*, 502 U.S. at 67).  Nor may habeas relief be granted "for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not to the custody of a defendant."  *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. at 68 (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (*per curiam*)).  Because Petitioner's fourth and fifth claims allege mere violations of state law and irregularities in post-conviction procedures, they are not cognizable on habeas corpus review.

### E.  The Pathologist

The sixth habeas claim alleges that the State's pathologist, Dr. Rachiel Land, perjured herself and testified beyond her level of expertise.  Dr. Land performed the autopsy on Kim Crider, and Petitioner alleges that, after her trial, the Genesee County prosecutor informed her that Dr. Land's testimony was not complete and could be

considered misleading.   The prosecutor reached this conclusion after learning that Dr. Land did not locate the bullet in Kim Crider's spine; her assistant found the bullet.  *See* Pet. for Writ of Habeas Corpus, Ex. A.  Petitioner claims that Dr. Land's testimony violated her rights to due process and a fair trial, as well as, Michigan Rule of Evidence 702, which states that an expert witness must be qualified by knowledge, skill, experience, or training.

The alleged violation of Michigan Rule of Evidence 702 is not a basis for habeas corpus relief.  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.").  And although Petitioner alleges that Dr. Land falsely claimed to have found the bullet in Kim Crider, this was a minor point, because the parties did not dispute the cause or manner of death.  The main issues on the murder counts were whether Petitioner was the shooter or aided and abetted the shooter and whether she had the requisite intent.  The alleged perjury on a minor issue could not have a "'substantial and injurious effect or influence in determining the jury's verdict,'" and was harmless.  *Brecht v. Abrahamson*, 507 U.S. at  623.

Furthermore, the information about Dr. Land came to light after Petitioner's trial.  Therefore, it cannot be said that the prosecution knowingly used perjured testimony.  *Cf. King v. Trippett*, 192 F.3d 517, 522-23 (6th Cir. 1999) (stating that, "[t]o be entitled to habeas relief, petitioner must show that the prosecution knowingly used perjured testimony") (citing *Burks v. Egeler*, 512 F.2d 221, 224 (6th Cir. 1975); *Norris v. Schotten*, 146 F.3d 314, 331 (6th Cir. 1998)).  The Court declines issue the writ on the basis of Petitioner's claim about Dr. Land's testimony.

27

### F.  Trial Counsel

Petitioner alleges that her trial attorney provided ineffective assistance and thereby violated her rights under the Sixth Amendment to the United States Constitution.  Specifically, Petitioner alleges that trial counsel failed to:  give an opening statement; run a lien on the co-defendants; object to the admission of a prior felony; cross-examine 60% of the witnesses; call witnesses in her defense; request Detective Elford's personal file; move for a competency hearing on "Pops;" object to prejudicial comments by the prosecutor; file a pretrial motion for discovery; call an expert witness on Post-Traumatic Stress Disorder; impeach the witnesses; move for a Walker hearing; object to police misconduct; investigate and utilize the court-appointed investigator; order a pretrial forensics evaluation; obtain hospital records and the criminal complaint involving David Smith; impeach Dr. Rachiel Land for lack of qualifications; and arrange for a DNA test to prove that she did not have sex with the victims.  The trial court determined that trial counsel's representation did not fall below an objective standard of reasonableness and that the result of the proceedings would not have been different in the absence of the alleged  errors.

### 1.  Clearly Established Federal Law

The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984), is clearly established federal law.  *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1403 (2011).  Under *Strickland*, an attorney is constitutionally ineffective if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the

28

'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted).

### 2. Application

#### a. Failure to Give an Opening Statement

Petitioner alleges that trial counsel should have given an opening statement, but "[a]n attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.'" *Millender v. Adams*, 376 F.3d at 525 (quoting *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E. D. Mich. 2002) (quoting *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 457 (9th Cir. 1985)). Furthermore, the purpose of an opening statement is "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole . . . ." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). Because defense counsel did not present any evidence, it was appropriate not to give an opening

29

statement.

### b.  Failure to Run a Lien on the Co-Defendant

Petitioner claims that trial counsel should have run a lien on co-defendant Kevin Debus and impeached him with a prior conviction.  Petitioner has not explained what a lien check would have revealed, and she has not demonstrated that the evidence would have been admissible under Michigan Rule of Evidence 404(b)(1), which generally prohibits the admission of evidence pertaining to other crimes, wrongs, or acts.  And because Petitioner was tried jointly with Debus, counsel for Debus in all likelihood would have objected to any attempt to impeach Debus with a prior conviction.  Trial counsel was not ineffective for failing to run a lien on Debus.

### c.  Failure to Object to the Admission of a Prior Felony

Petitioner claims that trial counsel was ineffective for not objecting to evidence of her prior conviction for unarmed robbery.  This claims lacks merit because Petitioner was charged with being a felon in possession of a firearm.  The parties stipulated that Petitioner had a prior conviction and was ineligible to possess a firearm.  It was reasonable trial strategy to stipulate to this fact, because the jurors were not told the nature of the prior conviction, and the stipulation prevented the prosecutor from revealing the nature of the conviction.

### d.  Failure to Cross-Examine Witnesses

Petitioner alleges that trial counsel was ineffective for failing to cross-examine more than 60% of the witnesses who testified.  Petitioner contends that the failure to cross examine witnesses was indicative of poor preparation and unreasonable

representation.

"A number of courts, including [the United States Court of Appeals for the Sixth Circuit], have found deficient performance where . . . counsel failed to challenge the credibility of the prosecution's key witness." *Higgins v. Renico*, 470 F.3d 624, 633 (6th Cir. 2006) (collecting cases). The failure to cross-examine witnesses also can constitute ineffective assistance when counsel fails to bring up "glaringly obvious grounds for impeachment." *United States v. Munoz*, 605 F.3d 359, 381 n.18 (6th Cir. 2010) (citing *Higgins v. Renico*, 470 F.3d at 632, and *Reynoso v. Giurbino*, 462 F.3d 1099, 1114 (9th Cir. 2006)).

Petitioner's attorney cross-examined all the important witnesses. He waived cross-examination of a few witnesses, but those witnesses were minor witnesses, who were cross-examined by at least one other defense attorney. And even though Petitioner claims that trial counsel failed to elicit testimony regarding motive, bias, credibility, and other matters, she has not alleged any specific examples where the failure to elicit information would have made a difference in the outcome of the trial. The Court concludes that trial counsel's apparent strategy did not amount to deficient performance and the deficient performance did not prejudice the defense.

### e. Failure to Call Witnesses

Petitioner claims that trial counsel was ineffective for failing to call Jamie McTaggert and Tina Persail as witnesses in her behalf. Petitioner contends that these witnesses would have refuted James Regal's testimony. Regal, however, did not testify in front of Petitioner's jury. Thus, it was not ineffective assistance to refrain from calling McTaggert and Persail.

31

Petitioner asserts that trial counsel also should have called Michigan State

Trooper David Stokes as a witness to refute testimony regarding John Crider's dying

declaration to Trooper Stokes that the suspects were two white females.  It is plausible

that Trooper Stokes would have confirmed, rather than denied, what John Crider said to

him, because both Arnis Davidsons and Police Officer Debra Lintz testified that John

Crider told the responding officers that two women shot him.  (Tr. Sept. 7, 2001, at 23,

30, and 33.)  The content of Crider's dying declaration was not particularly prejudicial in

any event, because his description of the suspects was so general.

### f.  Failure to Request Detective Elford's File

Petitioner states that, before the crimes in question occurred, she filed a criminal

complaint against David Smith for beating, raping, and kidnapping her.  She spoke to

Detective Elford at the time, and she now claims that trial counsel should have

requested Detective Elford's file on David Smith.  According to Plaintiff, Smith was an

undercover informant for Detective Elford, and Elford's file could have been inspected to

see if Smith was receiving favors from the police.

David Smith did not testify at Petitioner's trial, and the incident between him and

Petitioner was not related to the crimes for which Petitioner was charged.  Therefore,

whether he was receiving favors from the police was inconsequential, and trial counsel

was not ineffective for failing to request Detective Elford's file on David Smith.

### g.  Failure to Move for a Competency Hearing

Petitioner claims that trial counsel should have requested a competency hearing

for "Pops", who testified for the prosecution.  There is no evidence in the record that

"Pops" was incompetent, and his testimony was somewhat favorable to Petitioner,

32

because he claimed to have heard Petitioner and Patricia Plummer discussing a person named Rob, as opposed to a "robbery."  (Tr. Sept. 12, 2001, at 169-70.)  Trial counsel, therefore, was not ineffective for failing to request a competency hearing on Pops.

### h.  Failure to Object to the Prosecutor's Comments

Petitioner maintains that trial counsel should have objected to the prosecutor's comments that Petitioner was a prostitute and that this case was about sex for hire. Petitioner also objects to the prosecutor's remark that Petitioner cut Kim Crider's wallet off his dead body.

There was no direct evidence that Petitioner was a prostitute, but there was evidence that she and Patricia Plummer went to the victims' home to "turn tricks" or earn money by engaging in sex with the victims.  (*Id.* at 69, 118.)  There was additional evidence suggesting that Petitioner disposed of a victim's wallet.  (Tr. Sept. 18, 2001, at 26-27.)  Consequently, trial counsel, was not ineffective for failing to object to the prosecutor's remarks.

### i.  Failure to Move for Discovery

Petitioner contends that trial counsel should have moved for discovery and the prosecutor should have shared information with trial counsel.  Trial counsel did not complain about not having received a discovery packet from the prosecutor, and Petitioner has not shown how she was prejudiced from any lack of discovery. Therefore, trial counsel was not ineffective for failing to file a motion for discovery.

### j.  Failure to Call an Expert Witness

Petitioner alleges that trial counsel should have called an expert witness on Post-

Traumatic Stress Disorder because she was abducted and raped two weeks before the crimes in this case and was emotionally distressed.  If Petitioner is claiming that her emotional distress caused her to commit the crimes or prevented her from forming the necessary intent to commit the charged crimes, the evidence at trial belies her claim.  The evidence established that Petitioner was capable of planning and carrying out the crimes.  Therefore, an expert witness would have had difficulty establishing that Petitioner's alleged disorder somehow excused or reduced her criminal responsibility.  Trial counsel was not ineffective for failing to call an expert witness.

### k.  Failure to Impeach Witnesses

Petitioner states that trial counsel failed to impeach the trial witnesses, but she has not alleged any specific questions that counsel could have asked to impeach particular witnesses.  Thus, this claim lacks merit.

### l.  Failure to Object to Police Misconduct and Move for a Hearing

Petitioner claims that trial counsel should have objected to police misconduct and moved to suppress her statement to the police.  Petitioner contends that her statement was involuntary because she was suffering from Post-Traumatic Stress Disorder and was "high" on drugs.  She further alleges that Detective Elford threatened her during the interrogation and ignored her request to call her parents.

Detective Elford testified at trial that he advised Petitioner of her constitutional right to remain silent, her right to an attorney, and her right to stop the interrogation.  Detective Elford also testified that Petitioner had said she was willing to waive her rights and talk to him.  The interview lasted only an hour and twelve minutes, and it was tape-recorded.  According to Detective Elford, Petitioner was able to communicate, and there

34

was nothing hindering her ability to understand or communicate.  (*Id.* at 15-17, 33.)  The detailed and coherent account that Petitioner gave of the events before, during, and after the shooting supports the conclusion that Petitioner was not incapacitated by drugs or stress.

Nineteen minutes after the initial interview, Petitioner asked to speak with Detective Elford again.  At that time, she informed him that she had hid a needle in case she and Plummer had to poison the surviving victim to prevent him from identifying them.  (*Id.* at 33-34.)  This is additional evidence that Petitioner was coherent and that her statement to Elford was made voluntarily.  Because there is no evidence that the police mistreated Petitioner or that her statement to the police was coerced, defense counsel was not ineffective for failing to move for suppression of the statement.

### m.  Failure to Properly Utilize the Court-Appointed Investigator

Petitioner claims that trial counsel was ineffective for failing to properly utilize the private investigator, which the trial court appointed.  According to Petitioner, trial counsel and the investigator could have checked on the victims' and co-defendants' criminal history, investigated the crime scene, talked to witnesses, and investigated the kidnapping, rape, and beating that Petitioner suffered two weeks before the crime. Petitioner asserts that defense counsel should have had her evaluated to determine her mental status and should have obtained her hospital records to verify the seriousness of her injuries and prove that she did not receive any psychiatric evaluations after the kidnapping, rape, and beating.

As previously noted, David Smith's alleged assault on Petitioner was unrelated to the crimes for which Petitioner was charged, and her alleged stress disorder did not

35

excuse her criminal conduct.  Petitioner also has not shown how an investigation into any of the matters that she mentions would have made a difference in the outcome of the trial.  Thus, trial counsel's alleged deficiencies did not prejudice the defense.

### n.  Failure to Impeach Rachel Land for Lack of Qualifications

Petitioner contends that trial counsel should have impeached pathologist Rachiel Land with her lack of qualifications as an expert witness.  Dr. Land, however, claimed at trial that she had performed hundreds of autopsies.  The trial court was familiar with Dr. Land and did not hesitate to qualify her as an expert witness.  Furthermore, the allegation that Dr. Land might have given misleading testimony about discovering the bullet in Kim Crider's spine did not come to light until after Petitioner's trial.  For these reasons, defense counsel was not ineffective for attempting to impeach Dr. Land regarding her qualifications.

### o.  Failure to perform a DNA Test on Petitioner

Petitioner alleges that trial counsel should have performed a DNA test on her to prove that she did not have sex with the victims.  Petitioner was not charged with a sex crime, and whether she engaged in sex with the victims was irrelevant to the charges against her.  Therefore, defense counsel was not ineffective for failing to have a DNA test performed on Petitioner.

### p.  Cumulative Effect of Errors

Petitioner's final claim about trial counsel is that the cumulative effect of his errors deprived Petitioner of a fair trial.  This claim lacks merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas

36

relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), and *Lorraine v. Coyle*, 291 F.3d at 447).

For all the reasons given above, the Court finds that trial counsel's performance was not deficient, and the alleged deficiencies did not prejudice the defense. Petitioner therefore has no right to relief on the basis of her claims about trial counsel.

### G. Appellate Counsel

Petitioner's eighth and final claim alleges that her appellate attorney was ineffective. Specifically, Petitioner contends that appellate counsel failed to communicate with her, forfeited her right to oral arguments by filing an untimely brief, provided inadequate help with her supplemental brief, did not provide her with a copy of her trial transcripts, and failed to include her *pro se* issues in his appellate brief.

To prevail on her claim, Petitioner must demonstrate that her attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687; *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (stating that the proper standard for evaluating the petitioner's claim about appellate counsel is that enunciated in *Strickland*).

"Oral argument on appeal is not required by the Constitution in all cases; nor is it necessarily essential to a fair hearing. This is particularly true when 'legal arguments only are involved, and the material issues have been briefed.'" *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (citations omitted).

Petitioner's attorney raised several issues and sub-issues on appeal, and he

37

briefed the issues thoroughly.  Petitioner has not complained about the quality of her attorney's brief.  Thus, Petitioner was not prejudiced by the submission of her case on the briefs and by her attorney's failure to appear at oral arguments.

Petitioner was not entitled to a personal copy of the transcript of trial for appeal purposes because she was represented by counsel on appeal.  *Gay v. Watkins*, 579 F. Supp. 1019, 1022 (E.D. Pa. 1984).  And she was not entitled to compel her attorney to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and end citations omitted).

The Court has found no merit in the claims that counsel did not raise on direct appeal.  Appellate counsel appears to have made an objectively reasonable decision not to raise those claims, and there is not a reasonable probability that, but for appellate counsel's failure to raise the claims, Petitioner would have prevailed on appeal.  The Court therefore concludes that appellate counsel was not constitutionally ineffective.

## IV.  CONCLUSION

The state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus [Dkt. #1] and the amended petition [Dkt. #41] are **DENIED**.

38

It is further **ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not debate the Court's assessment of Petitioner's claims, or conclude that the issues deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner nevertheless may proceed *in forma pauperis* on appeal if she appeals this decision because she was permitted to proceed *in forma pauperis* in the District Court. Fed. R. App. P. 24(a)(3).


s/John Corbett O'Meara
United States District Judge


Date:  June 29, 2011




I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 29, 2011, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager